UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L.,[1] <br><br> Plaintiff, <br><br> v. <br><br> SSA COMMISSIONER, <br><br> Defendant. | Case No. 25-cv-00503-TSH <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 9, 18 |

## I.   INTRODUCTION

Plaintiff James L. moves for summary judgment to reverse the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 9.  Defendant cross-moves to affirm.  ECF No. 18.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated below, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion.[2]

## II.   PROCEDURAL HISTORY

On October 25, 2022, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, stating a disability onset date of September 2, 2021. Administrative Record (AR) 148-49.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  AR 53, 62, 95.  An ALJ held a hearing on December 14, 2023 and issued an unfavorable decision on January 31, 2024.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 5, 6.

AR 14-38, 63-74.  The Appeals Council denied Plaintiff's request for review on November 21, 2024.  AR 1-3.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

Plaintiff argues the ALJ failed to: (1) provide clear and convincing reasons for discounting his allegations of upper extremity dysfunction; (2) formulate a residual functional capacity that included mental work restrictions accounting for his non-severe anxiety disorder; and (3) properly evaluate whether his past relevant work as a computer programmer required more than frequent fine manipulation.

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards.  *Id.*  Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up).  Under this standard, which is "not high," the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations."  *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision.  *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that,

1  despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up).  But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

## V.  DISCUSSION

### A.  Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012).  To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis.  20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same standard for supplemental security income).  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since September 2, 2021.  AR 68.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

3

1  impairments: degenerative disc disease of the cervical spine with radiculopathy, coronary artery
2  disease/congestive heart failure, hypertension, and ventricular tachycardia. AR 68.
3        At step three, the ALJ evaluates whether the claimant has an impairment or combination of
4  impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the
5  "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings
6  describe impairments that are considered "to be severe enough to prevent an individual from doing
7  any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective
8  medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3).
9  "For a claimant to show that his impairment matches a listing, it must meet all of the specified
10 medical criteria. An impairment that manifests only some of those criteria, no matter how
11 severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a
12 claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent
13 to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering
14 age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff
15 did not have an impairment or combination of impairments that meets the listings. AR 70.
16       If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses
17 the claimant's residual functional capacity (RFC), defined as the most the claimant can still do
18 despite their limitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to
19 perform past relevant work, defined as "work that [the claimant has] done within the past five
20 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn
21 to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant
22 can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ
23 determined Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except he can frequently finger and handle with the bilateral upper extremities, and he can have frequent rotation/flexion of the neck. He can occasionally feel with the upper extremities. He can occasionally reach overhead with the right upper extremity. He can never climb ladders, ropes, or scaffolds. He can never work around unprotected heights, dangerous moving machinery, or uneven terrain, and he cannot work in an environment with a loud noise level above level 3.

4

AR 71. Based on this RFC, the ALJ determined Plaintiff could perform past relevant work as a computer programmer. AR 74. As such, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from September 2, 2021, through the date of the decision. AR 74.

Had the ALJ determined Plaintiff could not perform past relevant work, at step five the burden would shift to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles (DOT).[4] *Id.*

**B.   Subjective Complaints**

Plaintiff states he has dysfunction in his upper extremities that prevents him from performing his prior work as a computer programmer. AR 23, 266. He reported experiencing shaking, fatigue, weakness, numbness, and cramping in his hands, which made it difficult for him

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[4] The DOT classifies jobs by their exertional and skill requirements. 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

5

1    to type or use a computer more than 10 minutes before he required a 15 to 20-minute break.  AR

2    25, 172, 266.

3          The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects

4    of symptoms are inconsistent with the objective medical evidence and the other the evidence of

5    record.  AR 73.  In making this finding, the ALJ pointed to an examination in October 2022 that

6    indicated normal 5/5 strength in the upper extremities, and only mild pain with cervical range of

7    motion.  *Id.* (citing AR 1472).  The ALJ also pointed to a March 2022 treating record in which

8    Plaintiff stated he was able to participate in activities such as mowing his lawn, playing golf,

9    doing housework, and going on occasional walks, *id.* (citing AR 286); a September 2022 record in

10   which he stated he was able to walk over seven miles and reported "staying physically active," *id.*

11   (citing AR 1514); and a December 2022 record in which Plaintiff indicated he went fishing for

12   20–40-pound dorado in Mexico and was moving 20-pound pavers and walked two or more miles

13   while mowing his lawn, *id.* (citing AR 2721).  Based on this evidence, the ALJ found "the

14   objective medical evidence and the other the evidence of record do not support the level of

15   symptomology that the claimant alleged and is inconsistent with statements concerning the alleged

16   intensity, persistence, and limiting effects of the claimant's symptoms."  *Id.*

17         Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting his

18   allegations of upper extremity numbness, weakness, fatigue, and cramping.  Pl.'s Mot. at 3.  He

19   argues the ALJ erred in relying on isolated examination findings rather than looking at the medical

20   evidence as a whole when evaluating the credibility of his upper extremity symptoms.  *Id.* at 4.

21       **1.**    **Legal Standard**

22         The Ninth Circuit has established a two-step analysis for determining the extent to which a

23   claimant's symptom testimony must be credited:

24   > First, the ALJ must determine whether the claimant has presented
> objective medical evidence of an underlying impairment which could
> reasonably be expected to produce the pain or other symptoms
> alleged.  In this analysis, the claimant is not required to show that her
> impairment could reasonably be expected to cause the severity of the
> symptom she has alleged; she need only show that it could reasonably
> have caused some degree of the symptom.  Nor must a claimant
> produce objective medical evidence of the pain or fatigue itself, or the
> severity thereof.

6

> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014–15 (citations and internal quotation marks omitted). Under this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted). "In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." (internal citations omitted). *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021). *See also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.").

**2.     Analysis**

The Court finds the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints. Plaintiff met the first requirement by providing evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. AR 72-73. He alleged dysfunction in his upper extremities that prevented him from performing his prior work as a computer programmer. AR 23, 266. Plaintiff reported he experienced shaking, fatigue, weakness, numbness, and cramping in his hands, which made it difficult for him to type or use a computer more than 10 minutes before he required a 15 to 20-minute break. AR 25, 172, 266. Consistent with his allegations of upper extremity dysfunction, Plaintiff had multiple impairments contributing to his symptoms. Plaintiff suffered from bilateral carpel tunnel syndrome and cubital tunnel syndrome, for which he underwent a surgery on each arm in June and October 2019. AR 243. Despite the surgeries, Plaintiff reported constant and worsening symptoms in July 2020, when he exhibited swelling and joint dysfunction in two fingers for which he received injections into the joints. AR 243-45. Plaintiff's treatment provider warned it was unlikely that his carpel tunnel and cubital tunnel symptoms would completely

resolve due to the degree of the pre-surgical nerve dysfunction. AR 245.

In addition to cubital tunnel and carpel tunnel syndromes, Plaintiff had cervical spine spondylosis with symptoms radiating into his upper extremities. A January CT myelogram showed Plaintiff had a disc protrusion indenting his spinal cord with severe neural foraminal narrowing at multiple levels. AR 1480. Plaintiff attended physical and occupational therapy for his neck and upper extremity symptoms, including symptoms of numbness, tingling, and weakness. AR 265, 684, 1189. Plaintiff had corresponding examination findings of diminished sensation along the C5 and C6 nerve distributions, a shaking left hand, distal tremors, and sensory deficits in his hands. AR 261, 266, 1190, 1196. Plaintiff also had a history of Guillain-Barre Syndrome,[5] an underlying condition potentially contributing to his upper extremity dysfunction. AR 27-28, 260, 684.

Where, as here, objective medical evidence in the record established underlying physical impairments that could reasonably be expected to produce Plaintiff's reported upper extremity dysfunction, the ALJ could only reject those symptom allegations by offering "specific, clear and convincing reasons" for doing so. The ALJ found Plaintiff's alleged inability to use a keyboard for more than a short period of time was inconsistent with an examination in October 2022, which showed normal strength and mild pain with cervical spine range of motion. AR 73 (citing AR 1472). But this same examination showed that Plaintiff had diminished sensation from the clavicles down to the hands in a glove distribution. AR 1472. Further, in isolating the findings of a single examination, the ALJ failed to consider other significant objective medical findings corroborating Plaintiff's allegations of upper extremity dysfunction. As summarized above, examinations showed signs of diminished sensation along the C5 and C6 nerve distributions, a shaking left hand, distal tremors, and sensory deficits in his hands. AR 261, 266, 1190, 1196. Additionally, a January CT myelogram showed that Plaintiff had a disc protrusion indenting his

---

[5] Guillain–Barre Syndrome is a rare disorder in which the body's immune system attacks the patient's nerves, resulting tsh weakness, numbness, or paralysis. *See* https://www.mayoclinic.org/diseases-conditions/guillain-barre-syndrome/symptoms-causes/syc-20362793. Recovery from this condition can take several years, and some people may have residual lasting effects such as weakness, numbness, and fatigue. *Id*.

8

spinal cord with severe neural foraminal narrowing at multiple levels. AR 1480. Such examination and diagnostic evidence could provide a solid objective foundation for Plaintiff's allegations of upper extremity dysfunction, but it is unclear if the ALJ considered them. Moreover, Plaintiff's history of bilateral arm/hand surgeries could corroborate the degree of Plaintiff's nerve dysfunction, especially given a treating medical source's finding that Plaintiff would continue to have some residual symptoms from his carpel tunnel and cubital tunnel syndromes despite undergoing the surgeries. AR 243, 245. As such, the Court finds the ALJ erred in relying on isolated examination findings rather than looking at the medical evidence as a whole when evaluating Plaintiff's credibility. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding error when the ALJ's decision did not account for the record "as a whole," but rather relied on "cherry picked" evidence); *Williams v. Colvin*, 2015 WL 4507174, *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.") (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued, severe impairment"); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) ("[T]he Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).

Beyond the reference to the October 2022 examination results, the ALJ asserted that Plaintiff's activities, including mowing his lawn, playing golf, doing housework, moving pavers, walking over seven miles, and fishing, were inconsistent with his allegations of hand dysfunction. AR 73. However, none of these activities show how Plaintiff can type or engage in fine manipulation for more than 10 minutes at a time without taking a break. The Ninth Circuit has repeatedly found that a person need not be totally incapacitated to establish that he or she is disabled. *See Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain,

1    because impairments that would unquestionably preclude work and all the pressures of a
2    workplace environment will often be consistent with doing more than merely resting in bed all
3    day."). Likewise, the Ninth Circuit has recognized that "disability claimants should not be
4    penalized for attempting to lead normal lives in the face of their limitations," and has held that
5    "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would
6    these activities have any bearing on [her] credibility." *Id.* (alterations in original) (citing *Reddick*
7    *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). While these activities indicate Plaintiff had a
8    sufficient capacity for activities such as lifting and walking, he did not allege having significant
9    limitations in this regard. In fact, Plaintiff testified that he could lift up to 50 pounds and he could
10   walk up to a couple hours with no more than a little shortness of breath. AR 24, 26. The record
11   also shows that, despite experiencing a heart attack in July 2021 with the need for surgical stent
12   placement, a balloon angioplasty, a transcatheter mitral valve replacement, and implantation of a
13   pacemaker (AR 273, 337, 341, 349, 495), Plaintiff was able to recover and pursue exercise and
14   activities, including attending a 7.5 mile walking event in May 2022 (AR 280). However, Plaintiff
15   did not allege that he could no longer work as a computer programmer because of his cardiac
16   condition or exertional limitations; rather, he testified that his inability to perform his past work
17   was due to his upper extremity dysfunction and his inability to type or engage in fine manipulation
18   for extended periods. AR 23, 25, 266.

19   In sum, it is unclear how the activities cited in the ALJ's evaluation bear on his allegations
20   of upper extremity dysfunction. As such, the Court finds the ALJ failed to provide clear and
21   convincing reasons for discounting Plaintiff's allegations, and remand is appropriate.

22   **C.     Residual Functional Capacity**

23   In considering Plaintiff's impairments, the ALJ found that because his "medically
24   determinable mental impairment causes no more than 'mild' limitation in any of the functional
25   areas and the evidence does not otherwise indicate that there is more than a minimal limitation in
26   the claimant's ability to do basic work activities, it is nonsevere." AR 70. Plaintiff argues that
27   "notwithstanding the ALJ's assessment that Plaintiff had mild limitations across these . . . mental
28   areas, she failed to include mental work restrictions in Plaintiff's residual functional capacity

accounting for his mental deficits. Such an omission constituted material legal error." Pl.'s Mot. at 6.

### 1. Legal Standard

A claimant's residual functional capacity is an assessment of "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing SSR 96-8p). It "is the most [a claimant] can still do despite [his or her] limitations." *Id*. (citing 20 C.F.R. § 416.945(a)(1)). The "scope of the RFC plays a crucial role in the ALJ's determination of whether an individual is disabled and entitled to benefits under the Social Security Act." *Id*. "The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. Even though a non-severe impairment standing alone may not significantly limit an individual's ability to do basic work activities it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (cleaned up) (citing Social Security Ruling 96-8p).

### 2. Analysis

In determining the severity of Plaintiff's impairments, the ALJ found Plaintiff had mild mental limitations at step two of the sequential evaluation. The ALJ determined Plaintiff's "medically determinable mental impairment of anxiety disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." AR 69. In making this finding, the ALJ considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1), which are known as the "paragraph B" criteria." AR 69-70. The ALJ stated that her step two determination was "not a residual functional capacity assessment," which she recognized "requires a more detailed assessment" based on the paragraph B mental function analysis. AR 70. She explained her RFC assessment "reflects the degree of limitation I found in the 'paragraph B' mental function

analysis." *Id.*

Plaintiff argues "the ALJ's finding that Plaintiff had mild mental limitations at step two of the sequential evaluation should have translated into at least some mental work restrictions with regard to his capacity for complex work, maintaining concentration and persistence over an 8-hour workday, and adapting to significant changes in routine or work processes." Pl.'s Mot. at 7-8.  In support of his argument, he cites *Hutton v. Astrue*, 491 Fed. App'x 850 (9th Cir. 2012).  In *Hutton*, the Ninth Circuit held that an ALJ erred because he did not adequately consider the claimant's mild mental limitations arising from his PTSD when he was determining the claimant's residual functional capacity. *Id.* at 850-51 (citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe.'")).  The Court found that "while the ALJ was free to reject [the claimant's] testimony as not credible, there was no reason for the ALJ to disregard his own finding [the claimant's] nonsevere PTSD caused some "mild" limitations in the areas of concentration, persistence, or pace." *Id*. at 851.  "Numerous courts in this Circuit have followed *Hutton* and found reversible error where the ALJ failed to include mild mental limitations found at step two in the assessment of the claimant's RFC." *Kari P. v. Saul*, 2020 WL 6889202, *8 (S.D. Cal. Nov. 23, 2020) (collecting cases).

Here, unlike the ALJ in *Hutton*, the ALJ did consider Plaintiff's mild mental limitations in determining his RFC.  Specifically, the ALJ considered Plaintiff's mental limitations but found them nonsevere based on (1) the state agency psychological consultants' opinions, who "determined that the claimant's mental impairments are nonsevere"; (2) "the overall record, which shows no significant mental health treatment"; and (3) Plaintiff's "own testimony that he does not have any disabling symptoms associated with mental impairments."  AR 73; *see* AR 44 ("No mental medically determinable impairments established"); AR 45 ("No reported mental limitations by CLMT."); AR 57 (mental disorders "Non Severe"); AR 57-58 (finding no paragraph B limitations); AR 60 ("No MRFCs [Mental Residual Functional Capacity] are associated with this claim."); AR 1520 ("Patient reports he felt nervous and he has history of **anxiety**.  He feels better now. . . .  He does have a prescription for Ativan but he has not needed it.") (emphasis in original).

12

A review of the record supports this finding, as none of the medical providers in the record supported greater limitations than what the ALJ included in the RFC finding. An ALJ rationally relies on specific imperatives regarding a claimant's limitations that are supported by the record. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citation omitted). "In addition, the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Id.* (citing *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). As such, the Court finds substantial evidence supports the ALJ's RFC determination, and the decision must be affirmed on this ground.

### D.     Past Relevant Work

Finally, Plaintiff argues the ALJ erred in finding he could perform his past relevant work as a computer programmer. Pl.'s Mot. at 9. However, as discussed above, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's allegations of upper extremity dysfunction. Because the ALJ's consideration of Plaintiff's ability to perform past relevant work is likely connected to Plaintiff's allegations of upper extremity dysfunction, the Court remands on this issue as well.

### E.     Remedy

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits. The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019. "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial

13

evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled. Accordingly, remand for further proceedings consistent with this order is appropriate.

## VI.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion. This matter is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: October 14, 2025

THOMAS S. HIXSON
United States Magistrate Judge